UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AURELIEN BERANGER, *et al.*,

        Plaintiffs,

        v.

CLIFFORD "T.I." JOSEPH HARRIS,
JR., and RYAN FELTON,

        Defendants.

CIVIL ACTION NO.

1:18-CV-05054-CAP

# <u>O R D E R</u>

This is a securities action alleging the unlawful sale of cryptocurrency via digital "tokens" for a company called FLiK. Generally, the plaintiffs allege that the defendants are liable for selling the tokens because they constitute unregistered securities.

Before the court is the defendant Ryan Felton's motion to dismiss [Doc. No. 13],[1] and Felton's consent motion for extension of time to file initial disclosures and the parties' joint discovery plan [Doc. No. 17]. Having reviewed the record, the court enters the following order.

---

[1] The other named defendant, Clifford "T.I." Joseph Harris, Jr., has not made an appearance in this case. However, as noted further below, nothing on the docket indicates that Harris has been properly served.

## I.    Factual Allegations[2]

The defendants were the controlling shareholdings of FLiK, a company initiated to create an online distribution platform for entertainment projects. To raise money to launch the company and its online platform, the defendants conducted an initial coin offering ("ICO") from August 20, 2017 to September 20, 2017.  In an ICO, a company offers purchasers a unique digital asset, often called a "coin" or "token," in exchange for consideration.  FLiK's ICO involved the sale of a limited number of FLiK tokens, which were then available for sale on the secondary market.

On August 12, 2017, before initiating the ICO, FLiK published a "whitepaper" describing the company and the tokens that would be for sale during the ICO.  FLiK tokens holders would be able to use the tokens for content on the company's website, and token holders would have access to other activities like in-person FLiK events.  However, the defendants also touted the tokens' investment potential.  The tokens were valued at $0.06 per token at the beginning of the ICO.  From August to October 2017, FLiK made several announcements promoting the tokens, including social media posts describing high-value purchases, celebrity endorsements and investments,

---

[2] On a motion to dismiss, the court must take the facts alleged in the complaint as true.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).

and upcoming projects that the company would take on.  The plaintiffs allege that Felton generally posted the company's announcements, and other alleged promotions about FLiK were published via Felton's or the defendant Harris's individual social media accounts.  By October 17, 2017, the market value of the tokens had increased from $0.06 to $0.30 per token.   The next day, Felton advertised that the tokens would be redeemable for $14.99 per token in fifteen months.  However, sometime in 2017, the tokens began to rapidly decrease in value, and FLiK's social media campaign disappeared.  By February 15, 2018, the tokens' value dropped to about $0.18 per token.

In April 2018, FLiK announced that it had missed its launch date for its internet platform, and no further announcements about its progress were made.  Ultimately, FLiK never launched, and the company no longer exists.  As of August 3, 2018, the FLiK tokens' value was about $0.008 per token.  Between that and the failure of FLiK and its online platform, the tokens are now essentially worthless.  The plaintiffs suffered a total loss on their investments, which collectively total about $2 million.

The plaintiffs allege that the defendants solicited and sold the securities as part of a "pump and dump" scheme—a type of fraud scheme in which company owners artificially inflate the price of a security (the "pump") to then sell it at a higher price to duped investors (the "dump").  However, the

plaintiffs do not bring claims for fraud.  Instead, they allege that the FLiK tokens are securities that should have been lawfully registered before sale, and that the defendants are therefore liable for selling unregistered securities.  Specifically, the plaintiffs bring claims against the defendants under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a) (sale of unregistered securities), Section 15(a) of the Securities Act, 15 U.S.C. § 77o(a) (control person liability), and Georgia's Uniform Securities Act, O.C.G.A. § 10-5-58 (sale of unlawful securities).  Felton has moved to dismiss all the claims against him under Federal Rule of Civil Procedure ("Rule") 12(b)(6).[3]

## II.    Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Conversely, Rule 12(b)(6) allows for dismissal of a case when the complaint "fail[s] to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).

When evaluating a Rule 12(b)(6) motion, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick*, 693 F.3d at 1321–22.  To survive a Rule

---

[3] The defendant Harris has not appeared in this action, and there is no evidence on the docket that he has been served.

12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This requires more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 555. The plaintiff must allege facts that "raise the right to relief above the speculative level." *Id.*[4]

## III. Discussion

Felton offers several arguments for dismissal. First, he argues that the tokens the plaintiffs purchased are not securities and are thus not subject to

---

[4] While the complaint includes allegations of false or misleading statements, including that the defendants conducted a "pump and dump" fraud scheme, the plaintiffs bring only non-fraud claims. That is, their claims do not require fraud or scienter. The pleading standard for such claims is not elevated to the particularity requirements of Rule 9(b) "when the claim is not alleged to have been part of another fraud-based claim." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1278 (11th Cir. 2006) (holding that non-fraud securities claims "must be pled with particularity when the facts underlying the misrepresentation at stake in the claim are [also] said to be part of a fraud claim, as alleged elsewhere in the complaint"). Therefore, the complaint is not subject to the heightened pleading requirements of Rule 9(b).

the securities registration requirements.  He then argues that, even if the tokens are securities, the plaintiffs have nonetheless failed to adequately allege their claims under Sections 12(a)(1) and 15(a) of the Securities Act, and under Georgia's Uniform Securities Act, O.C.G.A. § 10-5-1, *et seq.*  The court will address these arguments in turn.

### A.    Whether the FLiK Tokens are Securities

As a threshold matter, the parties dispute whether the FLiK Tokens qualify as securities.  The federal Securities Act of 1933 defines a "security" as including "investment contracts."  15 U.S.C. §§ 77b(a)(1).  The Supreme Court in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946), set out the test for when a transaction is an investment contract under the federal securities laws.  "The Eleventh Circuit has interpreted the *Howey* test to comprise the following three elements: (1) an investment of money; (2) a common enterprise; and (3) the expectation of profits derived solely from the efforts of others."  *Hays v. Adam*, 512 F. Supp. 2d 1330, 1336 (N.D. Ga. 2007) (citing *SEC v. Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999). Felton argues that the plaintiffs have failed to allege the first and third elements of the *Howey* test.  The court disagrees.

As to the first element—an investment of money—Felton argues that the plaintiffs vaguely allege that they purchased or invested in the tokens

without saying that they actually invested money.  This argument is not persuasive.  "It is well-established that the 'investment of money' required for an investment contract need not be made in cash, and refers more generally to an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses."  *Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2018 WL 4410126, at *5 (S.D. Fla. June 25, 2018), report and recommendation adopted, No. 17-24500-CIV, 2018 WL 4828444 (S.D. Fla. Sept. 25, 2018) (citations omitted).

Viewed in the light most favorable to the plaintiffs, the complaint plausibly alleges an investment of money via cash, Bitcoin, or Ether to purchase the tokens.  As described in the complaint, the tokens were available for purchase via several forms of consideration, including digital assets like Bitcoin, Ether, or fiat currency.  Compl. at ¶45 [Doc. No. 1].  The complaint also lists the amount each plaintiff invested, which resulted in a total loss to each of them.  *Id.* at ¶108.  Therefore, the plaintiffs have sufficiently alleged the "investment of money" element of the *Howey* test. *Rensel*, 2018 WL 4410126, at *5 ("Thus, the Plaintiffs['] investment of assets, in the form of Ether and/or Bitcoin, satisfies the 'investment of money' prong for an investment contract."); *Solis v. Latium Network, Inc.*, No. 18-10255 (SDW) (SCM), 2018 WL 6445543, at *2 (D.N.J. Dec. 10, 2018) ("[T]he first

prong of the *Howey* test is satisfied because participants in Latium's ICO invested either U.S. dollars or Ether to purchase LATX tokens."); *SEC v. Blockvest, LLC*, No. 18CV2287-GPB(BLM), 2019 WL 625163, at *7 (S.D. Cal. Feb. 14, 2019) ("*Blockvest II*") ("Defendants' website and their Whitepaper's invitation to potential investors to provide digital currency in return for BLV tokens satisfies the first 'investment of money' prong.").[5]

Felton also disputes the third *Howey* element—that there was an expectation of profits derived solely from the efforts of others.  For this element, "the focus is on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party." *S.E.C. v. Merch. Capital, LLC*, 483 F.3d 747, 755 (11th Cir. 2007) (quoting *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982)).  The court finds that this element

---

[5] Felton has cited a previous decision in the *Blockvest* action to argue that the tokens in that case were found not to be securities.  Felton's Reply Br. at 7 [Doc. No. 15] (citing *SEC v. Blockvest, LLC*, No. 18CV2287-GPB(BLM), 2018 WL 6181408, at *7 (S.D. Cal. Nov. 27, 2018) ("*Blockvest I*").  In that initial decision, when addressing a motion for a temporary restraining order, the court found that "because there are disputed issues of fact, the Court cannot make a determination whether the test BLV tokens were 'securities' under the first prong of *Howey*." *Blockvest I*, 2018 WL 6181408, at *7.  But since then—and after Felton filed his reply brief—the court in *Blockvest II* found on reconsideration that providing digital currency in return for tokens was enough to satisfy the first element of *Howey*. *Blockvest II*, 2019 WL 625163, at *7.

has been sufficiently alleged, as the success of FLiK and the FLiK tokens was entirely based on the managerial efforts of the defendants.

Although the tokens had additional functionality—such as access to in-person FLiK events for token owners—the complaint details several ways in which Felton led the plaintiffs to believe that they could expect a profit from buying the tokens.  For instance, on October 18, 2017, Felton advertised via social media outlets that the "FLiK tokens will be redeemable for $3.99 in 3 months, $9.99 in 12 months and $14.99 in 15 months."  Compl. at ¶84 [Doc. No. 1].  He added that "[t]his represents TREMENDOUS growth in 1 year. After [this] news, we learned who can spot opportunity and who can't."  *Id.* In addition, the FLiK tokens were for an internet platform that had not yet been launched, and it was entirely up to the defendants to make that happen. If they did not—and they did not—the tokens would be worthless.  If they had launched a successful business, the value per token would have at least been something.  The plaintiffs had no say in the matter, only the ability to buy the tokens.  Indeed, the use of their funds was already determined by the defendants, as disclosed via the FLiK token whitepaper, which provided:

> 50% [of the funds] will be used for licensing content from major studios.

> 25% will be used to fund unique and creative film projects.

> 15% will be used for marketing and promotion of the FLiK platform.

> 10% will be used for implementation with additional viewing platforms.

*Id.* at ¶62.  The plaintiffs could not manage any of these tasks.  They could only hope that the defendants would do so effectively and that the value of the FLiK tokens would increase.  Thus, there was an expectation of profits derived solely from the efforts of the defendants.

Accordingly, the plaintiffs have sufficiently alleged that the FLiK tokens are securities, and Felton's motion to dismiss on this basis is due to be DENIED.

### B.    Section 12(a)(1) of the Securities Act

To state a claim under Section 12(a)(1),[6] the plaintiffs must show that (1) the securities were not registered; (2) the defendants offered or sold the securities to the plaintiffs; and (3) the defendants used a means of communication in interstate commerce in connection with the sale.  *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017).  Aside from his argument that the tokens are not securities—which the court rejects—Felton does not dispute

---

[6] Section 12(a)(1) of the Securities Act is the civil liability provision for persons who offer or sell a security in violation of Section 5, which prohibits the sale of unregistered securities using interstate commerce.  15 U.S.C. § 77e.

whether the plaintiffs have alleged the first and third elements of the claim, and the court finds that they have sufficiently done so. However, Felton asserts that the plaintiffs fail on the second element, arguing that the plaintiffs have not adequately alleged that they purchased the FLiK tokens from Felton.

Section 12(a)(1) makes the seller of unregistered securities liable "to the person purchasing such security from him." 15 U.S.C. § 77l(a). In this context, the Supreme Court has defined a "seller" to include both "the owner who passed title, or other interest in the security, to the buyer for value," as well as "the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owners." *Pinter v. Dahl*, 486 U.S. 622, 648, 647 (1988).

The plaintiffs allege that the defendants sold the tokens from August 1, 2017 to October 30, 2017 in connection with the ICO. Compl. at ¶111 [Doc. No. 1]. They allege that the defendants solicited buyers via the whitepaper published on August 12, 2017, which described FLiK and the upcoming ICO. The plaintiffs also provide numerous public statements by the defendants, generally between August and October 2017, promoting FLiK and the sale of the tokens. And they allege that promoting the sales served Felton's financial interest as a controlling shareholder of FLiK. In this way, the

11

plaintiffs have sufficiently alleged that Felton solicited the sales. The plaintiffs also allege that, at some point, each of them invested specified amounts by purchasing FLiK tokens, resulting in a total loss to each of them. *Id.* at ¶108.

However, the plaintiffs do not indicate when the purchases occurred. This creates a problem. Section 12(a)(1) claims must be "brought within one year after the violation upon which it is based." 15 U.S.C. § 77m. Courts in the Eleventh Circuit have held that the discovery rule does not apply to the statute of limitations period for Section 12(a)(1) claims. *Barron v. Lampley*, No. 4:15-CV-0038-HLM, 2015 WL 12591006, at *11 (N.D. Ga. June 22, 2015) ("The discovery rule does not apply to section 12(a)(1) claims." (quoting *Temple v. Gorman*, 201 F. Supp. 2d 1238, 1241 (S.D. Fla. Jan. 29, 2002))). This means that the clock on the limitations period begins on the date the unlawful sale occurred. Without an allegation as to when the plaintiffs purchased their respective tokens, the court is unable to determine whether their claims fail as time-barred.

Accordingly, because the dates of the purchases are needed to determine whether the plaintiffs' Section 12(a)(1) claims are actionable in this case, and the complaint contains no such allegations, the court finds that Felton's motion to dismiss is due to be GRANTED as to the plaintiffs' Section

12(a)(1) claims.  However, the plaintiffs shall have thirty (30) days to file an amended complaint to cure these deficiencies.

### C.  Section 15(a) of the Securities Act

The plaintiffs also seek to hold the defendants liable as control persons of FLiK based on the alleged Section 12 violation.  "[C]ontrol person liability under Section 15 is contingent upon a plaintiff proving a primary violation. If [a] plaintiff does not establish a primary violation under the Securities Act, dismissal of his Section 15 claim is warranted."  *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1357 (N.D. Ga. 2005).  Therefore, because the plaintiffs have failed to allege a primary violation of Section 12(a)(1), their claim under Section 15(a) is similarly due to be DISMISSED.  But like their Section 12(a)(1) claim, the plaintiffs may replead this claim within thirty (30) days via an amended complaint.

### D.  Georgia's Uniform Securities Act, O.C.G.A. § 10-5-1, *et seq.*

The plaintiffs also assert a claim under Georgia's Uniform Securities Act ("GUSA"), § 10-5-1, *et seq.*  Like the federal securities laws, GUSA makes it unlawful for a person to offer or sell a security in Georgia unless: (1) the security is a "federal covered security"; (2) it is exempted from registration; or (3) it is registered under Georgia law. O.C.G.A. § 10-5-20.  An "[o]ffer to sell includes every attempt or offer to dispose of or solicitation of an offer to

purchase a security or interest in a security for value." O.C.G.A. § 10-5-2(29). Under O.C.G.A. § 10-5-58, the purchaser of an unregistered security may maintain a private right of action against a person who violates O.C.G.A. § 10-5-20, a person who controls the primary violator, and a person who materially aids in the violation. The statute of limitations for such an action is "within two years after the violation occurred." O.C.G.A. § 10-5-58(j).

Accordingly, the requirements for the plaintiffs' claim under GUSA is generally the same as their Section 12(a)(1) claim, except the statute of limitations is two years instead of one. Because the FLiK ICO began within two years of the date this action was filed, the plaintiffs' alleged GUSA claim is timely. And, viewing the complaint in the plaintiffs' favor, the court finds that they have sufficiently alleged that that Felton was a controlling shareholder of FLiK, that the FLiK tokens are unregistered securities, and that Felton sold and/or solicited the plaintiffs' purchases of the FLiK tokens. Therefore, Felton's motion to dismiss is due to be DENIED as to the plaintiffs' claim under GUSA.

## IV.   Motion for an Extension of Time

Felton also filed a motion—consented to by the plaintiffs—for an extension of the deadline for initial disclosures and the joint preliminary report and discovery plan [Doc. No. 17]. The motion seeks to extend these

deadlines to thirty days after the defendant Harris files an answer to the complaint, noting the instant motion to dismiss and that the defendant Harris has not yet appeared in this case. However, the court has now ruled on the motion to dismiss and allowed the plaintiffs to file an amended complaint. Accordingly, the motion for an extension of time [Doc. No. 17] is due to be DISMISSED as MOOT. For clarity, the joint discovery plan shall be due within thirty (30) days of the first answer filed to the amended complaint, and initial disclosures shall be due following the parties' Rule 26(f) scheduling conference after the amended complaint is filed, as provided in Rule 26.

In addition, while Harris has not filed an answer or otherwise appeared, there is no evidence on the docket that he has been properly served. Therefore, the plaintiffs are ORDERED to show cause within fourteen (14) days of the date of this order why the defendant Harris should not be dismissed for lack of service under Rule 4.

## V.    Conclusion

Accordingly, the defendant Felton's motion to dismiss [Doc. No. 13] is **GRANTED IN PART and DENIED IN PART**. It is **GRANTED** as to the plaintiffs' claims under Sections 12(a)(1) and 15(a) of the Securities Act. The plaintiffs may replead those claims within thirty (30) days of the date of this

order via an amended complaint.  In addition, Felton's motion to dismiss is **DENIED** as to the plaintiffs' claim under Georgia's Uniform Securities Act. Felton's consent motion for an extension of time [Doc. No. 17] is **DISMISSED as MOOT**.  The joint discovery plan shall be due within thirty (30) days of the first answer to the amended complaint, and initial disclosures shall be due following the parties' Rule 26(f) conference after the amended complaint is filed, as provided in Rule 26.  Finally, the plaintiffs are **ORDERED** to show cause within fourteen (14) days of the date of this order why the defendant Harris should not be dismissed for lack of service under Rule 4.

**SO ORDERED** this 23rd day of April, 2019.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge